**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**JANET DAVIS,**

                              **Plaintiff,**


        **v.**                                            **5:16-CV-1337**
                                                    **(TJM/ATB)**


**KENNETH LUFT, et al.,**

                              **Defendants.**
_____

**Thomas J. McAvoy,**
**Sr. U.S. District Judge**


## DECISION & ORDER

Plaintiff Janet Davis alleges that Defendants violated her rights under the United

States Constitution when they arrested her for grand larceny. Defendants include four

current and former officers of the Johnstown Police Department, the bank customer

whose complaint led to Plaintiff's arrest, Lois McRedmond, and the City of Johnstown,

New York. Most of the Defendants filed a motion for summary judgment[1] pursuant to

Federal Rule of Civil Procedure 56. See dkt. # 41. The parties have briefed the issues

and the Court has determined to decide the matter without oral argument.

**I.      BACKGROUND**

**A.      The Initial February 9 Incident**

_____

    [1] Defendant McRedmond did not join in the motion. Further use of "Defendants"
will refer only to the moving Defendants unless indicated otherwise.

1

Plaintiff Janet Davis was at the relevant time the manager of the Key Bank in Johnstown, New York.  Between 10:00 a.m. and 11:00 a.m. on February 9, 2016, Lois McRedmond used an American Express debit card to make a withdrawal from an ATM at the Key Bank branch in Johnstown. Defendants' Statement of Material Facts ("Defendants' Statement"), dkt. # 41-8, ¶ 3.[2]  McRedmond did not remove the debit card from the ATM when she left the bank.  Id.  Approximately 45 minutes later, upon realizing she no longer possessed the card, McRedmond returned to the Johnstown Key Bank.  Id. at ¶ 4.  McRedmond first checked the ATM for the card before speaking with a teller.  Id. at ¶ 5.  The teller, Maryann Wendt, located the debit card in the ATM but did not return it to McRedmond.  Id. at ¶ 6; Plaintiff's Response to Defendants' Statement of Material Facts ("Plaintiff's Response"), dkt. # 46, at ¶ 6.  The Moving Defendants assert that Plaintiff told McRedmond that, if the card wasn't issued by Key Bank, "we don't have to give it back."  Defendants' Statement at ¶ 8.  Plaintiff denies this and asserts that Wendt informed McRedmond that her refusal to turn over the card was based on a Key Bank policy requiring destruction of cards left behind in the ATM if the cards were not issued by Key Bank.  Plaintiffs' Response at ¶ 8.  Plaintiff also claims that Wendt informed McRedmond that the card had already been destroyed.  Plaintiff's Counter-Statement at ¶

---

[2] Pursuant to Local Rule 7.1, both parties have submitted a Statement of Material Facts setting forth the material facts about which the party contends there is no genuine issue.  See Local Rule 7.1(a)(3).  Plaintiff has responded to Defendants' statement and included additional statements, to which the Defendants have responded.  "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  Id.  The Court will cite to the appropriate Statement for uncontroverted facts and note any genuine factual disputes.

8.[3] Defendants deny that Wendt told McRedmond the card was already destroyed and asserts that the evidence cited by Plaintiff does not establish that she did. Defendants' Response to Plaintiff's Counter Statement of Material Facts ("Defendants' Response") at ¶ 8. The cited evidence, Wendt's deposition testimony, indicates that Wendt told McRedmond about the destruction policy, but not that she told her the card was already destroyed. See Maryann Wendt Deposition ("Wendt Dep."), dkt. # 44-16, at 12-13. Defendants also cite Wendt's testimony that she did not tell anyone she had destroyed the card until later in the day. Defendants' Response at ¶ 8. Wendt destroyed the debit card. Plaintiff's Counter-statement after McRedmond left. Plaintiff's Counter-Statement at ¶ 9.

McRedmond went to the Johnstown Police for assistance later that day. Defendants' Statement at ¶ 9. At the police station, McRedmond described the earlier events to Defendant Sgt. John Rodriquez. Id. at ¶10. McRedmond also met with another officer, Defendant Kenneth Luft, and relayed the same facts. Id. at ¶ 11. Luft went to the bank and met with Plaintiff Janet Davis, the bank manager. Id. at ¶ 12. When Luft requested she return the card to McRedmond, Plaintiff refused. Id. At this point, Plaintiff claims, Wendt had already destroyed the card. Plaintiff's Response at ¶ 12, Plaintiff's Counter-Statement at ¶ 9. As an alternative, Luft offered to take possession of the card in his capacity as a police officer. Defendants' Statement at ¶ 13. Plaintiff contends that her refusal was pursuant to Key Bank policy and the instructions of her supervisor. Plaintiff's Response at ¶¶ 12, 14. Luft also spoke to Plaintiff's supervisor on the phone; the

_____

[3] Plaintiff's Response to Defendants' Statement of Material Facts includes a "Counter-Statement" that sets forth additional facts, beginning at page 10. As the numbering of these paragraphs begins again at 1, this decision will denote those additional paragraphs as "Plaintiff's Counter-Statement."

supervisor further explained Key Bank's policy. Plaintiff's Counter-Statement at ¶ 16. While Luft was in the bank, he threatened to make an arrest if someone did not return the card to him. Id. at ¶ 13.

After McRedmond indicated to him that she wanted to pursue her complaint, Luft returned to the police station to discuss the situation with his supervisor, Sgt. Rodriquez. Defendants' Statement. at ¶ 15. Rodriquez went to the bank himself to speak with Plaintiff. Id. at ¶ 16. During this visit, Rodriquez suggested to Plaintiff that the Johnstown Police might file criminal charges if she did not return the card to him. Id. Plaintiff refused to turn over the card, again citing Key Bank policy. Id. at ¶ 17. Rodriquez requested a copy of this policy, but Plaintiff told him she did not have one. Id. at 18. When Rodriquez pressed her again, she made a phone call. Id. After the phone conversation, Plaintiff told Rodriquez, "He said get a subpoena." Id. Plaintiff, later that day, complained to Johnstown Mayor Michael Julius about the officers' behavior. Plaintiff's Counter-Statement at ¶ 18.[4] At some point during the investigation and prosecution of Plaintiff, Defendants became aware of that complaint. Id. at ¶ 19.

## B.    The Decision to Prosecute Plaintiff

A few days after the initial events, Luft again contacted McRedmond about pursuing her complaint against Key Bank. Defendants' Statement at ¶ 19. On February 13, McRedmond met with Luft and signed a sworn statement regarding the events of February 9. Id. at ¶ 20 The statement form McRedomnd signed contained a warning about

_____

[4] Plaintiff's Statement of Material Facts suggests that she made this complaint shortly after Luft's first visit to the bank, but the cited evidence indicates that it occurred after Rodriquez's visit.

misdemeanor liability for false statements.  Id.  McRedmond also reaffirmed the accuracy and truthfulness of the statement's contents during her deposition.  Id. at ¶ 21.

At some point during the weeks following the February 9 incident, Defendant Chief of Police Mark Gifford and Defendant Lieutenant David Gilbo determined that they should charge Plaintiff with grand larceny in the fourth degree.  Defendants' Response at ¶ 24. Plaintiff asserts that "neither the District Attorney['s] Office nor the Johnstown Police Officers could provide an explanation as to why" Plaintiff was charged instead of her supervisor or the Key Bank corporation.  Plaintiff's CounteS-statement at ¶¶ 25, 26. Rodriquez believed the decision to charge Plaintiff was "over [his] pay grade" and that he did not have an opinion on that question.  See John Rodriquez Deposition ("Rodriquez Dep."), dkt. # 44-11, at 42.  Gifford believed Plaintiff was properly charged because she was the bank's manager.  See Mark Gifford Deposition ("Gifford Dep."), dkt. # 44-14, at 35, 50-51.

Plaintiff also claims that District Attorney Chad Brown and Assistant District Attorney Amanda Nellis denied giving any of the Johnstown Police approval to arrest Plaintiff.  Plaintiff's Counter-Statement at ¶ 29.  District Attorney Brown's testimony does not explicitly deny providing such approval.  See Chad Brown Deposition ("Brown Dep."), dkt. # 44-13, at 41-46.  Likewise, Assistant District Attorney Amanda Nellis did not expressly deny giving the officers approval to make an arrest.  See Amanda Nellis Deposition ("Nellis Dep.), dkt # 44-9, at 20-21.  Nellis did tell the police that she wished to conduct research into whether a crime had been committed and sought to have the officers look into whether Key Bank's policy existed.  Plaintiff's Counter-Statement at ¶ 30.

Approximately one week after McRedmond signed her sworn statement, Luft

contacted her to determine if she wanted to pursue charges related to the debit card incident. Defendants' Statement at ¶ 22. McRedmond signed a sworn Complaint on February 26, 2016. Id. at ¶ 23. The Complaint charged Plaintiff with grand larceny in the fourth degree. Id. McRedmond testified that she did not "feel pressured by police officers to file the Complaint against anyone" and that it was her idea. Id. at ¶ 25. Plaintiff does not dispute that McRedmond signed the complaint and the earler statement. However, Plaintiff claims that the officers informed her that the purpose of the prosecution was to challenge Key Bank's policy, not to arrest Plaintiff. Plaintiff's Response at ¶¶ 19-25.

Plantiff also asserts that another Johnstown Police Officer, not a party to this case, sent a complaint to Key Bank requesting Plaintiff's termination. Plaintiff's Counter-Statement at ¶ 32. The evidence cited in support of this statement is a handwritten note with "Sep/27/2017 8:27:29 AM." at the top. Dkt. # 44-22. This note does not identify its author or the target of the complaint. Id. The Court will disregard this statement.

### C. Disposition of the Criminal Charges Against Plaintiff

Plaintiff asserts that the Johnstown City Court eventually granted her motion to dismiss the charges against her as unopposed. Plaintiff's Counter-Statement at ¶ 35. Defendants do not dispute that the case ended through this motion, but contend that this statement is an indication that the criminal proceeding did not terminate in Plaintiff's favor. As will be explained below, Brown and Nellis testified concerning the decision to terminate the charges against Plaintiff.

### D. Procedural History

Plaintiff filed a Complaint in this Court on November 8, 2016. The Complaint

contained four causes of action.  Defendants Gifford, Luft, and Rodriguez answered that Complaint.  <u>See</u> dkt. # 5.  Defendant McRedmond never did.  On April 13, 2018, Plaintiff filed an Amended Complaint without objection from the Defendants.  <u>See</u> dkt. # 31.  That Amended Complaint raises four causes of action.  Count One, raised against all Defendants, alleged false arrest in violation of Plaintiff's rights under the United States Constitution.  Count Two alleged malicious prosecution against all Defendants.  Count Three alleged Defendants Gifford, Gilbo, and the City of Johnstown violated Plaintiff's constitutional rights by ratifying the unconstitutional conduct of municipal policymakers.  Plaintiff alleged that "Defendants Gifford and Gilbro were both aware of, and involved in, the decision to falsely arrest Janet Davis for following her bank's written policies regarding abandoned ATM cards, and both approved of, condone of and ratified this conduct."  Amended Complaint, dkt. # 31, at ¶ 49.  In addition, Plaintiff alleged, "the City of Johnstown is equally liable for this constitutional violation, given the actions of its policymakers in approving of, and in fact directing, this prosecution."  <u>Id.</u> at ¶ 51.  Count Four alleged false arrest and malicious prosecution under state law against McRedmond.

The City of Johnstown, Gifford, Gilbo, Luft, and Rodrigquez answered the Amended Complaint.  <u>See</u> dkt. # 35.  Those parties engaged in discovery, and those Defendants eventually filed the instant motion for summary judgment, which the parties have briefed.  No proof of service of the Amended Complaint on Defendant McRedmond has ever been filed, nor has any request for entry of default or motion for default judgment with respect to that Defendant.

## II.    LEGAL STANDARD

Defendants have filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56. It is well settled that on a motion for summary judgment, the Court must construe the evidence in the light most favorable to the non-moving party, see Tenenbaum v. Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986). An issue is genuine if the relevant evidence is such that a reasonable jury could return a verdict for the nonmoving party. Id.

A party seeking summary judgment bears the burden of informing the court of the basis for the motion and of identifying those portions of the record that the moving party believes demonstrate the absence of a genuine issue of material fact as to a dispositive issue. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the movant is able to establish a *prima facie* basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998). Evidence must exist to support each element of the non-movant's claim; "where there is an absence of sufficient proof as to one

essential element of a claim, any factual disputes with respect to other elements are immaterial and cannot defeat a motion for summary judgment." Salhuddin v. Goord, 467 F.3d 263, 281 (2d Cir. 2006).

## III.   DISCUSSION

Moving Defendants have filed a motion for summary judgment with respect to all of the claims against them.  They also assert qualified immunity.  The Court will address each argument in turn.

### A.   False Arrest

Defendants argue that the Court should grant summary judgment because probable cause existed to arrest and prosecute Plaintiff.  "[A] plaintiff claiming false arrest must show, *inter alia*, that the defendant intentionally confined him without his consent and without justification." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996) (citing Broughton v. State, 37 N.Y.2d 451, 456 (1975)).  Probable cause to arrest, however, serves as a "complete defense to an action for false arrest." Id.

"Probable cause requires an officer to have 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (quoting Martinez v. Simonetti, 202 F.3d 625,644 (2d Cir. 2000). "When determining whether probable cause exists courts must consider those facts *available to the officer* at the time of the arrest and immediately before it." Id. (emphasis in original).  "[A] law enforcement officer has probable cause to arrest if he received his information from some person, normally the putative victim or eyewitness, unless the

9

circumstances raise doubt as to the person's veracity." Id. (citations omitted). "[A]n identified citizen informant is presumed to be reliable." Id. (quoting Caldarola v. Calabrese, 298 F.3d 156, 165 (2d Cir. 2002)). "[A]n officer may not disregard plainly exculpatory evidence," but "the fact that an innocent explanation may be consistent with the facts alleged does not negate probable cause, and an officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause." Panetta, 460 F.3d at 395-96.

On February 26, 2016, McRedmond signed an Accusatory Instrument for a Felony Complaint against the Plaintiff. See dkt. # 41-2. That Instrument alleged:

> That **Janet B. Davis**, on the 9th Day of February, 2016, at Key Bank located at 225 North Comrie Avenue in the City of Johnstown, County of Foulton, State of New York, did commit the offense of Grand Larceny in the Fourth Degree, a felony in violation of Section 155.30(4) of the Penal law of the State of New York, in that Defendant did, at the aforesaid time and place (set forth statutory language constituting the offense):

> **Count One:** A person is guilty of grand larceny when he steals property and when: (4) The property consists of a credit card or debit card.

> The facts upon which this Felony Complaint is based are as follows:
> Your deponent states that on the 9th day of February, 2016, sometime between the hours of 10:00AM and 11:00AM, while at Key Bank, 225 North Comrie Avenue, located within the corporate limits of the City of Johnstown, County of Fulton, State of New York, the defendant did commit the crime of grand larceny in the fourth degree sub (4) in that she did, knowingly and unlawfully deprive your deponent of her personal property consisting of one American Express Jackson Hewitt debit card. The defendant did as bank manager, while having no legal right to do so, instruct bank personnel under her supervision to withhold the debit card from it's [sic] rightful owner Lois M. McRedmond thereby denying her access to the card and it's [sic] remaining balance of $3,414.00.

> The foregoing factual allegations are based upon personal knowledge of the Complainant[.]

> **Wherefore**, Complainant prays that Janet B. Davis be dealt with pursuant to law.

10

Id.  Lois McRedmond signed the Instrument.  Id.

Police took a statement from McRedmond on February 13, 2016.  See dkt. # 41-2.
In that statement, McRedmond related that she had gone to the drive-up ATM machine at
the bank to withdraw money on a debit card she received from Jackson Hewitt after
receiving an income tax refund.  Id.  After making some withdrawls, her card had a
balance of more than $3,400.  Id.  Between a half-hour and forty-five minutes after she
drove away, McRedmond realized she had left her card with the remaining funds at the
bank.  Id.  She returned to the bank and found that the card was no longer at the ATM.  Id.
McRedmond went inside the bank seeking help.  Id.  The "cashier" she approached went
to the ATM to look for the card and then asked McRedmond if the card was one the bank
had issued.  Id.  When McRedmond told her that a third party had issued the card, the
cashier told McRedmond that it was the bank's policy not to return cards the bank had not
issued.  Id.  The cashier consulted another "clerk" about whether to give the card back,
and the second clerk left the decision up to the first.  Id.  When the "cashier" refused to
return the card, McRedmond left.  Id.  She first called American Express, where a
representative could not understand why the bank refused to return the card.  Id.  Rather
than ask American Express to cancel the card and provide her with a new one,
McRedmond went to police for help in getting her card back.  Id.  She and an officer went
to the bank.  Id.  McRedmond waited outside while an officer went in and talked with bank
officials.  Id.  After fifteen minutes, the officer returned and informed McRedmond that the
bank refused to return the card.  Id.

Defendant Johnstown Police Officer Kenneth Luft filed a report as well.  See dkt. #
41-2.  That report states that, after McRedmond made her complaint at the police station,

Luft went to the bank with McRedmond and had her wait outside.  Id.  Inside the bank, Luft spoke with Plaintiff, who was the branch manager.  Id.  He informed Plaintiff "that she need to turn over McRedmond's debit card or someone risks getting arrested for larceny." Id.  Plaintiff refused to turn the card over because Key Bank had not issued the card.  Id. The ATM would only hold the card, Davis explained, if the card were "red flagged" or the user forgot the card in the machine.  Id.  In either situation, the bank "destroyed" the card. Id.  Luft informed Davis that the card could not have been "red flagged" because it still contained value.  Id.  Davis "agreed but still would not turn over the card[.]"  Id.  The bank had not yet destroyed the card, but Davis refused to return the card "because it was bank policy not to return non-Key Bank cards to their owners."  Id.  Plaintiff called a supervisor and asked if she couild return the card.  Id.  The supervisor would not agree because returning the card to the officer would violate bank policy.  Id.

Plaintiff contends that Officers sought but failed to receive approval from the Fulton County District Attorney's Office to charge Plaintiff.  See Plaintiff's Counterstatement at ¶¶ 28-29.  She alleges that Assistant District Attorney Amanda Nellis testified that she told officers that she needed time to research whether Plaintiff had committed a crime, and that officers needed to investigate Key Bank policies before charging Plaintiff.  Id. at ¶ 30. Officers, Plaintiff claims, did nothing to conduct this investigation, and did not ask the District Attorney's office to consider filing an information or a grand jury indictment rather than charging Plaintiff through an Accusatory Instrument.  Id. at ¶ 31.

Nellis testified that Sergeant Rodriguez had called and informed her that "there was an issue with some woman's debit card or a credit card, that she had put it in the ATM machine and the ATM machine spit the card back out."  Nellis Dep. at 9-10.  The

complainant had left the card in the machine, and Key Bank would not give her the card when she returned asking for it. Id. Police asked Nellis "what I thought about it." Id. at 10. Nellis said that she "would need to look into it" and "do some research." Id. Police promised to contact her later in the week about the issue. Id. Sergeant Rodriguez did not ask Nellis if the conduct in question constituted a crime. Id. Nellis found out about Plaintiff's arrest on the day officers made it; officers called and asked whether they should issue Plaitniff "an appearance ticket or . . . bring her in to be processed." Id. at 11. Nellis told police to issue an appearance ticket. Id. Nellis also testified that she had not directed officers to arrest Plaintiff, but had instead directed them to get a copy of the Bank's policies to see if Plaintiff was following bank policy in refusing to return the card. Id. at 11-12. Nellis stated that "based on what the policy said, if there was a policy that said she couldn't return the card back, then she probably wouldn't have been arrested." Id. at 13. Officers did not ask her opinion on whether Plaintiff had committed a crime, and did not tell her the crime with which they intended to charge Plaintiff. Id. At the same time, Nellis also testified that when Rodriguez called to inform Nellis that police planned to arrest Plaintiff, she did not ask if he had obtained the written policy and did not ask any questions about the policy. Id. at 113-14. She knew Plaintiff was about to be arrested, and did not tell Rodriguez not to take that action. Id. at 114-15.

Plaintiff also points to the deposition testimony of Fulton County District Attorney Chad Brown to support her claim that officers lacked probable cause for arresting Plaintiff. See dkt. # 44-13. The portions of testimony cited by Plaintiff indicate that Brown had doubts about "[w]hether we could prove criminal intent to deprive another of property . . . because if Ms. Davis was acting under the guise of KeyBank policy, she wasn't

13

necessarily acting with a criminal intent[.]" Id. at 57. Brown would not have presented the case to a grand jury; he "didn't think there was enough to establish [guilt] beyond a reasonable doubt." Id. at 68. Brown agreed that there was not "legally sufficient cause to believe that Janet Davis committed the elements of the crime." Id. He did not think "we could overcome the issues regarding criminal intent under the facts we had." Id. at 68-69.

Defendants argue that they had probable cause to arrest Plaintiff. Defendants charged Plaintiff with committing grand larceny by violating Section 155.30(4) of the New York Penal Law. That Section provides that "[a] person is guilty of grand larceny in the fourth degree when he steals property and when: . . . 4. The property consists of a credit card or debit card." N.Y. Penal L. § 155.30(4). "A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof." N.Y. Penal L. § 155.05(1). Defendants argue that Plaintiff knowingly possessed and withheld McRedmond's debit card after she forgot it in the machine, and then refused to return that property when McRedmond asked for the card back. She also refused to return the card after police requested the item. Defendants argue that they were entitled to rely on McRedmond's signed statement and complaint, and that Luft and Rodriguez both verified the truth of her accusations. They also argue that the fact that Plaintiff had a defense to the charges does not vitiate probable cause for the arrest.

Plaintiff argues that the Defendants lacked probable cause to arrest Plaintiff because no reasonable officer could believe that she had the specific intent to steal from McRedmond necessary to charge her. It must have been clear to the Defendants that Plaintiff did not seek to obtain the property for her own use, but simply sought to follow the

14

dictates of bank policy. The real reason for the arrest, Plaintiff contends, was that the Defendants were upset that Plaintiff failed to comply with their orders to return the card–orders which Plaintiff contends were "plainly unlawful." Officers charged her even though she had not given the order to destroy the card, Plaintiff claims, because she was in their jurisdiction and available to charge. Moreover, Plaintiff had complained to Johnstown's Mayor about their conduct. Plaintiff also contends that Defendants ignored ADA Nellis' order to wait until she investigated to charge the Plaintiff, arresting her even when justification for the charge remained unclear.

A conviction for larceny requires that the State demonstrate "larcenous intent," which "means the 'intent to deprive another of property to appropriate the same to himself or to a third person." People v. Medina, 18 N.Y.3d 98, 103 (N.Y. 2011) (quoting N.Y. Penal L. § 155.05(1)). "The intent to 'deprive' or appropriate' prescribed in section 155.05 is satisfied by the exertion of ''permanent or virtually permanent control over the property taken.'" People v. Jensen, 86 N.Y.2d 248, 252 (N.Y. 1995) (quoting People v. Jennings, 69 N.Y.2d 103, 118 (N.Y. 1986)). As such, "[t]he mens rea element of larceny is simply not satisfied by an intent to temporarily take property without the owner's permission." Peopel v. Drouin, 143 A.D.3d 1056, 1057 (3d Dept. 2016) (quoting Medina, 18 N.Y.3d 98 at 105). "Felonious," or "larcenous" intent "is rarely susceptible of proof by direct evidence, and must usually be inferred from the circumstances surrounding the defendant's actions." People v. Russell, 838 N.Y.S. 2d 710, 712 (3d Dept. 2007).

Here, the undisputed evidence indicates that McRedmond, Officer Luft, and Sgt. Rodriguez went to the bank to seek return of McRedmond's debit card, which contained more than $3400. Plaintiff refused to return the card to any of them, citing bank policy.

Evidence therefore exists that she asserted permanent or virtually permanent control over the property.

Plaintiff clearly had a defense to that charge, but whether Plaintiff would ultimately prevail when the matter came to trial is not the relevant question in this instance. The question here is whether "the arresting officer [had] 'knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested.'" Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000). Here, the evidence cited above represents knowledge possessed by the arresting officers on their own investigation and from a reasonably trustworthy source that indicated that Plaintiff had intentionally deprived McRedmond of control of her property.

Plaintiff contends that the evidence clearly showed that Plaintiff lacked any intent, and was just following procedures, and that a reasonable officer could not believe she had any intent to deprive McRedmond of her property permanently. She argues that officers should have obtained copies of bank policies and obtained authorization from the District Attorney before making the arrest. Under most circumstances, Plaintiff's argument would be unavailing, because police are not required to eliminate the possibility of a suspect's innocence before arresting that person. An officer is not required "'to explore and eliminate every theoretically plausible claim of innocence before making an arrest.'" Caldarola v. Calabrese, 298 F.3d 156, 168 (2d Cir. 2002) (quoting Riccuit v. N.Y.C. Transit Auth., 124 F.3d 123, 128 (2d Cir. 1997)). "Nor does it matter that an investigation might have cast doubt upon the basis for the arrest" since "if the arresting officer has probable cause, he need not also believe with certainty that the arrestee will be successfully

prosecuted."  Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001).

The circumstances here, however, are different.  Police did not just arrest Plaintiff after they determined that she had kept the card and refused to return it.  Instead, they consulted the District Attorney about whether to arrest the Plaintiff.  A reasonable juror could conclude that officers were themselves uncertain whether they had probable cause to find that Plaintiff had committed a crime and sought more information from a legal expert.  That legal expert testified that she did not answer their question before police decided to arrest the Plaintiff.  Making all inferences in the Plaintiff's favor, a reasonable juror could conclude that a reasonable officer, under the particular circumstances of this case, "consider[ing] those facts *available to the officer* at the time of the arrest and immediately before it" did not have sufficient information to conclude that Plaintiff had committed a crime at the time those officers arrested her.   Panetta, 460 F.3d at 395.  A reasonable juror could find that officers exercised reasonable caution in seeking the opinion of the District Attorney before arresting the Plaintiff, and then abandoned that caution when they refused to wait until they received that opinion before arresting Plaintiff. The Court will deny the motion on this claim.

### B.    Malicious Prosecution

Defendants next seek dismissal of Plaintiff's malicious prosecution claims.  Plaintiff brings such claims pursuant to Section 1983 and state law.  To sustain a Section 1983 claim for malicious prosecution, a plaintiff must "show 'a seizure or other perversion of proper legal procedures implicating [her] personal liberty and privacy interests under the Fourth Amendment' . . . that criminal proceedings were initiated against him, with malice

17

and without probable cause, and were terminated in his favor." Lanning v. City of Glens Falls, 908 F.3d 19, 24 (2d Cir. 2018) (quoting Washington v. County of Rockland, 373 F.3d 310, 316 (2d Cir. 2004)). While showing that charges terminated in the plaintiff's favor under New York law requires only a showing that the reason for the termination was "'not inconsistent with innocence,'" Section 1983 has a more rigorous standard. Id. at 27 (quoting Cantalino v. Danner, 96 N.Y.2d 391, 395 (2001). A malicious prosecution claim under Section 1983 "must . . . show that the underlying criminal proceeding ended in a manner that affirmatively indicates [her] innocence." Id. at 22.

Defendants contend that they cannot be liable for malicious prosecution because no evidence indicates that the officers lacked probable cause to arrest Plaintiff, even if the prosecution did not end with a conviction. Moreover, Defendants claim, no evidence exists to demonstrate that they acted from a wrong or improper motive. Officers were presented with a complaint from a citizen who sought to file a charge, and–when presented with probable cause–officers felt duty-bound to bring the charges. Plaintiff contends, as above, that officers lacked probable cause. She also asserts that the circumstantial evidence in this case indicates that officers acted with malice because the officers were upset at Plaintiff for not complying with their unlawful directives. Plaintiff contends that the case ended in her favor when District Attorney Brown did not oppose the motion to dismiss because Defendants "did not feel that Plaintiff had committed a crime, or that they had sufficient evidence to prosecute her."

The Court will grant the motion with respect to Plaintiff's Section 1983 claim because Plaintiff cannot show that the case ended in a way that affirmed her innocence. Plaintiff's case ended when the trial court granted her motion to dismiss as unopposed.

Plaintiff contends that such evidence indicates that the case terminated in her favor and qualifies her to bring a malicious prosecution claim. The evidence cited above, however, does not demonstrate that dismissal of Plaintiff's case "affirmatively indicated" her innocence. The evidence, read with all inferences in favor of Plaintiff, the non-moving party, simply indicates that Plaintiff's case ended in her favor because Defendant's did not oppose dismissal of the action. Brown was skeptical of the ultimate success of any prosecution, but such skepticism is not the same as an affirmation of innocence. Judgment must be granted to Defendants on Plaintiff's Section 1983 malicious prosecution claim on that basis.

Plaintiff's state-law claim requires a different analysis. Defendants' prosecution ended in her favor when the District Attorney's Office decided not to oppose her motion to dismiss. In New York, "any termination of a criminal prosecution, such that the criminal charges may not be brought again, qualifies as a favorable termination, so long as the circumstances surrounding the termination are not inconsistent with the innocence of the accused." Cantalino, 96 N.Y.2d at 395. "A dismissal without prejudice qualifies as a final, favorable termination if the dismissal represents the formal abandonment of the proceedings by the prosecutor." D'Amico v. Correctional Med. Care, Inc., 120 A.D.3d 956, 962 (4th Dept. 2014). The evidence in this case indicates that the prosecution agreed to dismiss the charges, at least in part because of the prosecutor's sense that the charges lacked sufficient merit or proof. The prosecution did not oppose the termination. Under those circumstances, a reasonable juror could find a favorable termination. The Court could not grant judgment on this basis.

Defendants further contend that no evidence supports a finding of actual malice on

19

the part of the officers who brought the charges. "The 'actual malice' element of a malicious prosecution action does not require a plaintiff to prove that the defendant was motivated by spite or hatred, although it will of course be satisfied by such proof. Rather, it means that the defendant must have commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." Nardelli v. Stamberg, 44 N.Y.2d 500, 502-503 (N.Y. 1978)). "Since '[a]ctual malice is seldom established by direct evidence of an ulterior motive,'" a plaintiff can use circumstantial evidence to prove that claim. Cardoza v. City of New York, 139 A.D.3d 151, 164 (1ˢᵗ Dept. 2016) (quoting Martin v. City of Albany, 42 N.Y.2d 13, 17 (N.Y. 1977)). "Actual malice may also be inferred from a total lack of probable cause, or from defendant's intentionally providing false information to law enforcement authorities." Id. "[T]he lack of probable cause and actual malice elements are independent, and 'a jury may, but is not required to, infer the existence of actual malice from the fact that there was no probable cause to initiate the proceeding.'" Id. (quoting Martin, 42 N.Y.2d at 17).

Defendants argue that no reasonable juror could find that they acted maliciously in bringing charges against the Plaintiff. They contend that "the actions of the moving defendants were taken for no other reason but to serve the ends of justice. Faced with a complainant who desired to file a criminal charge, supported by probable cause to believe that the person to be charged had committed the alleged crime, the Officers were duty bound to process that complaint and assist McRedmond's effort to seek justice."

Plaintiff argues that the evidence indicates that "the real reason why the Defendant Officers sought to arrest Plaintiff was because they were upset at her for not complying with what were clearly unlawful directives." As evidence of malicious conduct, Plaintiff

20

contends that Defendants "targeted" Plaintiff, though they knew she had not given the direction to retain McRedmond's card, and had not destroyed that item.  Instead, they chose her because she was in the jurisdiction and could be prosecuted.  Plaintiff also argues that they had to know that she lacked the *mens rea* necessary for grand larceny. In addition, her arrest came after she complained to the Johnstown mayor about the officers' conduct, and the officers disregarded the District Attorney's office to wait to pursue charges until after an the office performed basic research on the issue and on the policy Plaintiff cited as her reason for seizing the card.  Moreover, Plaintiff contends, Defendant's own explanations of their conduct are questions of credibility for the jury to resolve.

The Court finds that a question of fact exists as to whether Defendants acted with actual malice.  Plaintiff points to evidence by which jurors could conclude that Defendants wanted to arrest Plaintiff, that they ignored the District Attorney's Office caution in bringing charges, and that the decision to prosecute Plaintiff came after she defied officers and complained to the Mayor.  A reasonable juror could find malice under those circumstances.  The motion will therefore be denied with respect to Plaintiff's state-law malicious prosecution claim.

### C.      Municipal Liability

Plaintiff does not respond to Defendants' arguments concerning the liability of the City of Johnstown.  Plaintiff names the City and Defendants Gifford and Gilbo in Count Four.  The claims against Gifford and Gilbo on this Count are based on their decision to prosecute the Plaintiff.  As the Court has found a constitutional violation in the decision to

arrest Plaintiff, and evidence indicates that Gifford and Gilbo were directly involved in that decision, the Court will deny the motion with respect to those Defendants.

As to the City of Jamestown, federal law requires a particular showing to obtain liability against a municipality under Section 1983. Municipal liability is limited under Section 1983 by Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978). In that case, the Supreme Court found that municipal liability existed "where that organization's failure to train, or the policies or customs that it has sanctioned, led to an independent constitutional violation." Segal v. City of New York, 459 F.3d 207, 219 (2d Cir. 2006). To prevail, a plaintiff must "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury." Bd. of County Commr's v. Brown, 520 U.S. 397, 403 (1997). "A government's official policy may be 'made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy.'" Dangler v. New York City Off Track Betting Corp., 193 F.3d 130, 142 (2d Cir. 1999) (quoting Monell, 436 U.S. at 694).

Plaintiff has not pointed to any municipal policy or custom that caused her injuries. The Defendants' motion will be granted with respect to this claim.

### E.    Qualified Immunity

Defendants assert that even if the Court were to conclude that a reasonable juror could find them liable on any of the claims against them, they would be entitled to qualified immunity. "Qualified immunity–a concept derived from common law–affords law enforcement officers a broad shield from claims for money damages arising from the performance of their duties." Ganek v. Leibowitz, 874 F.3d 73, 80 (2d Cir. 2017). An officer is entitled to such immunity even when evidence of a constitutional violation exists, "unless plaintiff can . . . show that the right violated was 'clearly established at the time of

defendant's actions.'" <u>Id.</u> at 81 (quoting <u>Zalaski v. City of Hartford</u>, 723 F.3d 382, 388 (2d Cir. 2013)).  A right is clearly established when "precedent" has "spoken with sufficient clarity to have placed the constitutional question 'beyond debate.'" <u>Id.</u> (quoting <u>Ashcroft v. al-Kidd</u>, 563 U.S. 731, 735 (2011)).  Courts evaluate that conduct "not from the perspective of courts or lawyers, but from that of a reasonable officer in the defendant's position."  <u>Id.</u>

Such immunity is available to an officer who "had arguable probable cause to arrest the plaintiff for any offense, regardless of the offense with which the plaintiff was actually charged."  <u>Kass v. City of New York</u>, 864 F.3d 200, 206 (2d Cir. 2017).  "Arguable probable cause exists when 'it was objectively reasonable for the officer to believe that probable cause existed, or . . . officers of reasonable competence could disagree on whether the probable cause test was met.'" <u>Id.</u> (quoting <u>Myers v. Patterson</u>, 819 F.3d 625, 633 (2d Cir. 2016)).  Qualified immunity is available to an officer making an arrest "unless 'no officer of reasonable competence could have made the same choice in similar circumstances.'" <u>Id.</u> (quoting <u>Myers</u>, 819 F.3d at 633).  "The qualified immunity defense, thus, is a broad shield that protects 'all but the plainly incompetent or those who knowingly violate the law.'" <u>Id.</u> (quoting <u>Zalaski</u>, 723 F.3d at 389).

Plaintiff here argues that probable cause was lacking because no evidence existed by which a reasonable officer could determine that Plaintiff acted with felonious intent.  As explained above, Plaintiff contends that the evidence indicated that Plaintiff followed bank policy in retaining the card, and nothing indicated that she had any intent but to follow that policy.

As the Second Circuit has explained, however, "unlike at trial, where circumstantial

evidence must support a finding of culpable intent beyond a reasonable doubt, a probable

cause determination, and thus an arguable probable cause determination, can be made

on 'substantially less' evidence." Zalaski, 723 F.3d at 393 (quoting State v. Clark, 255

Conn. 268, 273 (2001)).  Since "'the practical restraints on police in the field are greater

with respect to ascertaining intent . . . , the latitude accorded to officers considering the

probable cause issue in the context of *mens rea* crimes must be correspondingly great.'"

Id. at 393 (quoting Cox v. Hainey, 391 F.3d 25, 34 (1st Cir. 2004)).

　　As explained above, the Defendants received a criminal complaint that accused

Plaintiff of engaging in all of the acts necessary for liability under the larceny statute for

which she was charged.  Not only did they hear such allegations from the purported victim

of the crime, but they verified independently Plaintiff's involvement in taking the card from

McReador.  Under those circumstances, any reasonable officer would be forced to

conclude that Plaintiff engaged in the *acts* prohibited by the statute.  The question is

harder when it comes to whether Plaintiff acted with the *mens rea* necessary to find

probable cause that she committed the crime in question.  Ultimately, prosecutors

abandoned the charges, despite the fact that Plaintiff had refused to return the card.  Still,

the facts indicate that Plaintiff kept the card in the face of directions to return it.   In

addressing this question, the Court notes that "[a]n assessment of intent frequently

depends on circumstantial evidence."  Id. 393.

　　The Court finds that a jury question exists here as to the knowledge that officers

had about whether probable cause existed to arrest the Plaintiff.  As explained above,

officers decided to arrest Plaintiff knowing that the District Attorney's office had been

consulted about the existence of probable cause and had demanded more information

24

before agreeing she should be charged. Officers did not provide this information but arrested her anyway. If jurors find that those facts exist, a reasonable juror could conclude that reasonable officers could not disagree about the lack of probable cause to arrest Plaintiff. The motion will be denied in this respect as well.

### F. Conclusion as to Moving Defendants

The Court will therefore grant the motion in part and deny the motion in part. The Court concludes that summary judgment should be granted to the Defendants with respect to Plaintiff's Section 1983 malicious prosecution claim and to the City of Johnstown and denied in all other respects. The Court also finds that the question of qualified immunity is a factual question that must be decided by a jury.

### G. Defendant McRedmond

Plaintiff served her initial Complaint on Defendant McRedmond. See dkt. #4. McRedmond never answered or otherwise responded to the Complaint. Plaintiff has filed no proof of service of her Amended Complaint on McRedmond. No one has ever entered an appearance for McRedmond, much less responded in any way to the Amended Complaint. Plaintiff will be directed to take appropriate action with respect to McRedmond.

## IV. CONCLUSION

For the reasons stated above, the Court will GRANT moving Defendants' motion for summary judgment, dkt. # 41, in part and DENY the motion in part. The motion is GRANTED with respect to all claims against the City of Johnstown and with respect to Plaintiff's claim of malicious prosecution pursuant to 42 U.S.C. § 1983 and denied in all other respects. The Plaintiff is hereby ORDERED to take appropriate action with respect

to Defendant McRedmond within twenty-one (21) days of the date of this Order.


Thomas J. McAvoy
Senior, U.S. District Judge

**IT IS SO ORDERED.**

**DATED: August 15, 2019**