**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**JANET DAVIS,**

                        **Plaintiff,**

      v.                                                     **5:16-CV-1337
                                                               (TJM/ATB)**

**KENNETH LUFT, et al.,**

                        **Defendants.**
_____

**Thomas J. McAvoy,
Sr. U.S. District Judge**


**DECISION & ORDER**

      Before the Court is Plaintiff's motion for reconsideration of the Court's Order granting in part and denying in part the Defendants' motion for summary judgment. See dkt. # 50.  This case involves allegations that Defendants violated Plaintiff's constitutional rights when they arrested her for refusing to return an American Express debit card used by Defendant Lois McRedmond at a Key Bank branch in Johnstown, New York.  Plaintiff managed the branch.  Also before the Court is Plaintiff's motion for default judgment against Defendant McRedmond.  See dkt. # 51.  The parties have briefed the issues and the Court has determined to resolve the questions without oral argument.

**I.    BACKGROUND**

      Between 10:00 a.m. and 11:00 a.m. on February 9, 2016, Lois McRedmond used an American Express debit card to make a withdrawal from an ATM at the Key Bank

1

branch in Johnstown. McRedmond did not remove the debit card from the ATM when she left the bank. Approximately 45 minutes later, upon realizing she no longer possessed the card, McRedmond returned to the bank seeking the card. Bank employees refused to return the card, citing company policy.

McRedmond went to the Johnstown Police for assistance later that day. At the police station, McRedmond described the earlier events to Defendant Sgt. John Rodriquez. McRedmond also met with another officer, Defendant Kenneth Luft, and relayed the same facts. Luft went to the bank and met with Plaintiff Janet Davis, the bank manager. When Luft requested she return the card to McRedmond, Plaintiff refused. While Luft was in the bank, he threatened to make an arrest if someone did not return the card to him.

Eventually, Police charged Plaintiff with grand larceny in the fourth degree, but a Johnstown City Court eventually granted Plaintiff's motion to dismiss the charges against her as unopposed.

Plaintiff filed a Complaint in this Court on November 8, 2016. The Complaint contained four causes of action. Defendants Gifford, Luft, and Rodriguez answered that Complaint. See dkt. # 5. Defendant McRedmond never did. On April 13, 2018, Plaintiff filed an Amended Complaint without objection from the Defendants. See dkt. # 31. That Amended Complaint raises four causes of action. Count One, raised against all Defendants, alleges false arrest in violation of Plaintiff's rights under the United States Constitution. Count Two alleges malicious prosecution against all Defendants. Count Three alleges Defendants Gifford, Gilbo, and the City of Johnstown violated Plaintiff's constitutional rights by ratifying the unconstitutional conduct of municipal policymakers.

2

Count Four alleges false arrest and malicious prosecution under state law against McRedmond.

The City of Johnstown, Gifford, Gilbo, Luft, and Rodrigquez answered the Amended Complaint. See dkt. # 35. Those parties engaged in discovery, and those Defendants eventually filed the instant motion for summary judgment. The Court issued a decision on August 15, 2019 granting the Defendant's motion in part and denying it in part. The Court dismissed all claims against the City of Johnstown and dismissed Plaintiff's malicious prosecution claim. The Court denied the motion in all other respects.

The Court also noted that no proof of service of the Amended Complaint on Defendant McRedmond has ever been filed, nor had any request for entry of default or motion for default judgment with respect to that Defendant and that Amended Complaint. Plaintiff responded by filing a motion for default judgment. Plaintiff did not seek an entry of default from the Clerk of Court.

## II.     LEGAL STANDARD

### A.     Reconsideration

Plaintiff moves for reconsideration of the portions of the Court's order that granted Defendants' motion for summary judgment. When a party files a motion for reconsideration, "[t]he standard for granting such a motion is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked–matters, in other words, that might reasonably be expected to alter the conclusion reached by the court." Shrader v. CSX Transp., 70 F.3d 255, 257 (2d Cir. 1995). Such a motion is "not a vehicle for relitigating old issues, presenting the case

under new theories, securing a rehearing on the merits, or otherwise taking 'a second bite at the apple[.]'" Analytical Surveys, Inc. v. Tonga Partners, L.P., 684 F.3d 36, 41 (2d Cir. 2012) (quoting Sequa Corp. v. GBJ Corp., 156 F.3d 136, 144 (2d Cir. 1998)).

### B. Default Judgment

The Local Rules for the United States District Court for the Northern District of New York provide that:

> A party shall accompany a motion to the court for entry of a default judgment, pursuant to Fed. R. Civ. P. 55(b)(2), with a **clerk's certificate of entry of default** in accordance with Fed. R. Civ. P. 55(a), a **proposed form of default judgment**, and a copy of the pleading to which no response has been made. The moving party shall also include in its application of the moving party or the moving party's attorney setting forth facts as required by L.R. 55.2(a).

L.R. 55.2(b) (emphases in original).

## III. DISCUSSION

The Court will address each motion in turn.

### A. Reconsideration

Plaintiff seeks reconsideration of two parts of the Court's order. The Court will address each in turn.

#### i. Claims Against the City of Johnstown

Plaintiff first seeks reconsideration of the Court's order dismissing claims against the City of Johnstown. She claims that the Court erred in finding that Plaintiff had offered no opposition to Defendants' motion to dismiss those claims, and that in any case the evidence in the case supports a claim against the City because "its chief policymakers, Police Chief Gifford and Lieutenant Gilbo were the driving force behind the Plaintiff's

4

arrest and malicious prosecution." She argues that they were the moving force behind her false arrest–a claim that remains–and that the Court erred in finding summary judgment for the City because of their alleged role in directing her arrest. Defendants respond that this argument came not in response to Defendants' arguments about municipal liability, but in response to the individual Defendants' claims of qualified immunity.

In its decision permitting false arrest claims to go forward against the Defendants, the Court concluded that "the claims against Gifford and Gilbo on this Count are based on their decision to prosecute the Plaintiff. As the Court has found a constitutional violation in the decision to arrest Plaintiff, and evidence indicates that Gifford and Gilbo were directly involved in that decision, the Court will deny the motion with respect to those Defendants." In terms of municipal liability, "when a subordinate municipal official is alleged to have committed the constitutional violation, municipal liability turns on the plaintiffs' ability to attribute the subordinates' conduct to the actions or omissions of higher ranking officials with policy making authority." Amnesty America v. Town of West Hartford, 361 F.3d 113, 126 (2d Cir. 2004). "One means of doing so . . . is to establish that a policymaker ordered or ratified the subordinates' actions." Id. (citing Weber v. Well, 804 F.2d 796, 803 (2d Cir. 1986)("liability could be premised on sheriff's ordering of unconstitutional strip searches."). While the Court notes that Plaintiff did not make this argument about municipal liability in response to Defendants' arguments but instead in response to their qualified immunity claims, the Court must acknowledge that the Plaintiff is correct that the municipality could be liable under these circumstances. Clear error of law would exist to find otherwise, and the Court will grant the motion with respect to this claim. The false arrest claim against the City of Johnstown will be reinstated in this case.

5

### ii. Malicious Prosecution Claim

Plaintiff next argues that the Court committed clear error of law by finding that Plaintiff could not support her malicious prosecution claim. She argues that dismissal of her case on her motion, coupled with the prosecutor's statement of doubt that a charge could be sustained, is sufficient evidence to overcome summary judgment, and that the Court committed clear error by finding otherwise. In Lanning v. Glens Falls, 908 F.3d 19, 25 (2d Cir. 2018), the Second Circuit Court of Appeals "[wrote] to dispel any confusion among district courts about the favorable termination element of a § 1983 malicious prosecution claim." The Court explained that New York common law rules for malicious prosecution were different than those applied in a Section 1983 claim, and a constitutional claim required more emphatic proof of such favorable termination. Id. at 25-29. To prevail on such a claim, a plaintiff must show that "the criminal proceedings against [her] were terminated in a manner indicating her innocence." Id. at 29. The Court here found that the charges were dismissed with prosecutors having doubts about whether they could prevail at trial. Such evidence does not "indicate" innocence, but instead a decision that the case was not worth pursuing. Plaintiff's brief did not address the law on the issue of favorable termination, instead claiming in a footnote that the favorable termination element was obvious. The Court does not find clear error in applying this standard, and will deny the motion on these grounds.

### B. Default Judgment

Plaintiff has filed a motion for default judgment. See dkt. # 51. In her motion, Plaintiff represents that the Clerk of Court filed an entry of default against Lois

McRedmond on March 14, 2017.  See Affirmation of Elmer Keach, dkt. # 51-1, at ¶ 3.  The Court notes that the docket contains such an entry with reference to Plaintiff's original Complaint.  See dkt. # 15.  The docket also reflects that on March 16, 2017, the Court informed the Plaintiff that any motion for default judgment against McRedmond should be filed within 30 days of the entry of default.  See dkt. # 16.  On May 1, 2017, the Court granted Plaintiff's request for an extension of time to move for default judgment, providing Plaintiff until June 1, 2017 to file such a motion.  See dkt. # 17.  During a telephone conference with Magistrate Judge Baxter on June 14, 2017, Plaintiff's counsel informed the court that McRedmond had filed for bankruptcy.  See docket entry dated June 14, 2017.  Counsel intended to explore options with McRedmond and her counsel.  Id.  On September 18, 2017, Plaintiff's counsel informed Magistrate Judge Baxter that he hoped to depose McRedmond to determine whether she should be dismissed from the action.  See docket entry for September 18, 2017.  During a telephone conference on February 7, 2018, Magistrate Judge Baxter inquired as to the status of Defendant McRedmond in relation to the Amended Complaint Plaintiff prosed filing.  See docket entry for February 7, 2018.  No response by counsel is recorded in the docket entry.

On April 13, 2018, Plaintiff filed an Amended Complaint that again named McRedmond as a Defendant.  See dkt. # 31.  McRedmond has never answered this Complaint.  Litigation continued on the matter.  On August 15, 2019, the Court granted in part and denied in part Defendants' motion for summary judgment.  See dkt. # 49.  In that opinion, the Court noted that Defendant McRedmond had never answered the Amended Complaint.  The Court directed Plaintiff to take appropriate action.  After Plaintiff filed the instant motion for default judgment, Defendant McRedmond, who is proceeding pro se,

7

wrote the Court. See dkt. # 52. On September 9, 2019, McRedmond wrote the Court in response to a "certified letter she had received." Id. McRedmond further related that she had not wanted Plaintiff to be arrested, but she followed police officers' advice in her attempt to get her credit card returned. Id. McRedmond also claims that she had been informed at a court hearing "that the lawyer for the Johnstown Police Department would take care of me in this case." Id.

The Court will deny the Plaintiff's motion for default judgment with leave to renew at an appropriate time. First, as explained above, a pre-condition for obtaining default judgment is entry of default by the Clerk of Court. While Plaintiff obtained an entry of default for her original complaint, she filed an Amended Complaint that again named McDermond as a defendant. McDermond did not answer or otherwise respond to this pleading, but Plaintiff has never requested an entry of default due to that failure. Default judgment is not appropriate without that entry. Moreover, McRedmond's letter to the Court makes clear that she intends to raise a defense in this action. Given her pro se status and her clear lack of understanding of court procedures, the Court will permit McRedmond time to answer or otherwise respond to the Amended Complaint. Plaintiff can take appropriate action if she fails to respond as directed.

## IV. CONCLUSION

For the reasons stated above, the Plaintiff's motion for reconsideration, dkt. # 50, is hereby GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect Plaintiff's false arrest claims against the City of Johnstown, and the Clerk of Court is directed to REINSTATE the City as a Defendant in this matter. The motion is DENIED in all other respects. The Plaintiff's motion for default judgment against Defendant

McRedmond, dkt. # 51, is hereby DENIED. Defendant McRedmond is hereby ORDERED to answer or otherwise respond to the Plaintiff's Amended Complaint within 21 days of the date of this order. Failure to respond could lead to entry of default and default judgment against the Defendant.

**IT IS SO ORDERED.**

Thomas J. McAvoy
Senior, U.S. District Judge

Dated: November 12, 2019